INSTITUTO CUBANO DE ESTABILI-
ZACION DEL AZUCAR, Libelant,

v.

THE GOLDEN WEST and Skibs A/S
Golden West, Respondent.

United States District Court,
S. D. New York.

March 3, 1955.

Thacher, Proffitt, Prizer, Crawley & Wood, New York City, for libelant.

Pyne, Lynch & Smith, New York City, for respondent.

BICKS, District Judge.

Libelant instituted a proceeding under Section 8 of the United States Arbitration Act, 9 U.S.C. § 8, to compel respondent to proceed with arbitration. It does not appear that the respondent has filed any answer or exceptions to the libel. Libelant, invoking the provisions of Section 4 of the Act[1], now moves for like relief.

1. 9 U.S.C. § 4 in pertinent part provides: A party aggrieved by the alleged failure * * * to arbitrate under a written agreement for arbitration may petition any court of the United States * * * for an order directing that such arbitration proceed in the manner provided for in such agreement. * * * "

The libel alleges that (i) by a charter party dated April 17, 1952 respondent undertook to transport for the libelant blackstrap molasses aboard the T/V Golden West; (ii) on May 14 and May 16, 1952, libelant delivered to respondent as cargo aboard the said vessel a quantity of blackstrap molasses; (iii) upon discharge of said cargo there was a shortage of approximately 300,000 pounds; and (iv) that the charter party provided for arbitration of disputes arising thereunder. The Court is then asked to direct that the matter in controversy be arbitrated in accordance therewith.

Although the libel alleges that respondent undertook to transport libelant's cargo by a charter party dated April 17, 1952, such apparently is not the fact. The papers submitted on the motion disclose that the T/V Golden West was chartered by the respondent owner to Overseas Commodex Corp. on May 24, 1949 and that said charter was renewed on May 16, 1951 for a period of three years one and a half months. Under the terms thereof the whole capacity of the vessel was chartered to Overseas Commodex Corp, and the master was to sign bills of lading as directed by the charterer. On April 17, 1952, while the vessel was still under long-term charter to Overseas Commodex Corp., libelant entered into a charter party for hire of the vessel, with Transocean Shipping & Trading Company, as time chartered owner. (The relationship between Overseas Commodex and Transocean Shipping does not appear and is not here material.) Respondent at no time entered into any charter party with the libelant for the hire of the T/V Golden West. In May 1952 the master signed three bills of lading covering the cargo in suit which provided, inter alia:

"This shipment is carried under and pursuant to the terms of the Charter dated April 17th, 1952 * * * between Transocean Shipping & Trading Company and Instituto Cubanó de Estabilizacion del Azucar, as Charterer, and all the terms whatsoever of the said Charter except the rate and payment of freight specified therein apply to and govern the rights of the parties concerned in the shipment."

The bills of lading do not contain an arbitration clause; the charter referred to in the bills of lading, however, does.

It is clear that the libel is drawn upon the theory that the charter party referred to in the libel constituted the contract of carriage. The motion papers, however, reveal that the charter of April 17, 1952 was in fact a sub-charter between a time charterer only and the libelant, to which the respondent owner was not a party, and that the libelant was the holder of bills of lading issued by the master. Apparently on this motion libelant is proceeding on the theory that the contract of carriage consists of the bill of lading and the incorporated charter. It is unnecessary for our purpose to consider whether under the circumstances of this case, the bill of lading is merely a receipt and not a contract of carriage. See e. g. Poor on Charter Parties and Ocean Bills of Lading, Third Edition, Section 105 and cases cited therein.

The issue presented on this motion is whether the respondent ever agreed with libelant to arbitrate the claim in controversy. In support of its position that the respondent did so agree libelant relies solely upon the bills of lading and cites Son Shipping Co. v. De Fosse & Tanghe, 2 Cir., 1952, 199 F.2d 687, and Southwestern Sugar & Molasses Co. v The Eliza Jane Nicholson, D.C.S.D.N.Y. 1954, 126 F.Supp. 666. In Son Shipping Co. v. De Fosse & Tanghe, supra, charterer sought arbitration with the owner of a vessel pursuant to the terms of a charter party incorporated into bills of lading issued by the master. The Court of Appeals, finding it unnecessary to make any distinction between the charter party and the bills of lading, held that the owner was bound by its agreement to arbitrate disputes with the char-

terer. That case is not authority for libelant's position. There the owner had agreed *in the charter party incorporated in the bill of lading* to arbitrate all disputes arising therefrom; here the owner was not a party to the charter agreement referred to in the bills of lading and indeed may well have been in complete ignorance thereof except through the reference in the bills of lading.

Southwestern Sugar & Molasses Co. v. The Eliza Jane Nicholson, supra, is inapposite, the Court having found that there was no incorporation of the terms of any charter party in the bill of lading.

Libelant would in effect have the court either construe the reference in the bill of lading to the charter between it and Transocean Shipping & Trading Company as a reference to the charter between the respondent and the primary charterer, or deem the respondent a party to the sub-charter because the master issued a bill of lading making reference thereto. Neither of said alternatives is warranted.

Motion to compel arbitration denied.